Green, J.
delivered the opinion of the court.
Parker, the lessor of the plaintiff below, claims title to the land in controversy, under a grant to himself for two hundred acres, dated April 2, 1835.
The defendants claim to hold under a grant to Anthony Sharp, for 3500 acres, dated 10th day of July, 1783. The question is, whether the grant to Sharp covers the land in dispute? It calls to begin on Smith’s line, and run with it and Martin Armstrong’s line, east 180 chains, to two swamp white oaks; thence north 1944 chains, to a stake; thence west 180 chains, to a stake; and thence south to the beginning. The proof shows that the beginning corner of this tract was well marked, and that the line east was marked to the south eqst corner, which was also marked. The other three lines of the grant were not originally run and marked. The distance from the beginning to the south-east corner is 830 poles, 110 poles longer than the grant calls for. If Sharp’s grant be surveyed by Running the first line to the swamp white oaks,thesouth-eastcornerasmarked, thence north 194¿chains,. and thence west 180 chains, the distance called for, and thence to the beginning, the land in controversy will not be included. But if the third line be run the length of the first, and thence south to the beginning, the grant to Sharp will include the land in dispute. On the 13th of August, 1799, Sharp conveyed one third of his tract to James Robertson, to begin on the north west corner of his tract, a stake, and to run south 259& poles to a stake; thence east 720 poles, to a stake; thence north 259& poles to a stake, and west 720 poles, to the beginning. Robertson had conveyed the same land to Frederick Ward, on the 4th of February, 1799, who conveyed to Thomas McCrory, on the 13th of March, 1801. William L. Mitchell, a witness, proved that some time before 1830, he was .employed by the McCrory’s, sons of T. McCrory, who claimed to be the owners of the locative interest in Sharp’s grant, to lay off and survey the same. That *49 ‘he went to the beginning corner of said grant, the white-oak, birch, and crab-apple trees, then he went north with Edward Sharp’s line to a poplar and white oak, which he marked, then he run east, to a white oak and elm, 7924 poles, then south and west from said white oak and elm. Witness marked so as to lay off the said locative interest of said McCrory, being one third of the grant, 1166^ acres. The lines run had never been marked, and he first marked them as the lines of the locative interest; that he did not survey the whole grant, nor mark other lines than those bounding the locative interest. Martin, another witness, stated that he had run the lines marked by Mitchell for the boundaries of the locative interest; that they were generally known, and that McCrory and those claiming under him had been fn possession of the said locative interest, as marked, fourteen or fifteen years. The lines of Sharp’s grant, as marked by Mitchell, includé the land in controversy.
The court charged the jury, that if the lines of Sharp’s grant were not originally run and marked, but had been surveyed since the issuance of the grant, such resurvey to be valid, must be in reasonable conformity to the calls of thé grant. That the proper mode of surveying the grant would be, to run the first line east to the swamp white oaks; and as there were no lines or corners marked from thence, it should be run north, the distance called for, and thence west 180 .chains, the distance called for, and thence, a diágonai line, to the beginning; and that, unless such resurvey were so~made, it was void and binding on no one. A verdict and judgment were rendered for the lessor oí the plaintiff, from which this appeal is prosecuted.
We think the court erred in the charge to the jury. Although the court indicates correctly the method in which the grant should have been surveyed, yet to say, that unless it were so m'ade, it would be void arid binding in rio one, prostrates erilirely the doctrine of remarking. That doctrine is based upon the principle, that if the remarking be done, in good faith and in reasonable conformity to the calls of the grant, it operates as an estoppel upon all parties; and fixes the lines ás marked, though it afterwards may appear that the *50 original lines were different from such remarking. What is reasonable conformity is a question of fact, which must be decided upon the circumstances of each case. Many cases have occurred, where the old lines not having been known, the lines hav.e been run and marked by the owner, which lines the court has regarded as the boundary of the tract, though the whole lines were .afterwards discovered. If this were not so, no map would be secure in his boundary, where he had remarked his lines, how honestly soever he may have done so. For it might happen, at a great distance of time, after valuable improvements had been made, and after other grants, depending on such remarking for their locality, hapl been issued — that the old lines might be discovered, and a whole neighborhood disturbed in their possessions. ft was to prevent this mischief, that the remarking was put op the ground of estoppel, and not on that of presumption that the true lines were marked. But the remarking, to be valid, must be done in good faith, and in reasonable conformity to the calls of the grant.
In the present case, there is no doubt of the honesty of purpose with which these lines were run and marked. The method, which was pursued to find the north-west corner was the most natural that could have been taken. It required much less labor to arrive at the corner, by reversing the course called for in the grant, and running directly north to it, than to run as the grant calls, east and north and then west to the desired points. And if the courses and distances had all conformed to the calls of the grant, as they had a right to presume, .the one method would have been as certain as the other to ascertain the north-west corner.
We think these lines were run in reasonable conformity yyith the calls of the grant. The calls for course are precisely pursued. The accidental fact, that the first line h longer than the distance called for, constitutes the only reason why there is any discrepancy between the resurvey and the method by \yhich the lines sjhpuld hav.e been run. We think therefore these lines are in reasonable conformity to the calls of the grant.
But it is contended, by the defendant in error, that the re *51 survey having been made by a party entitled to only a part of the land contained in the grant, and having extended to only part of two lines of the grant, it is of no validity whatever. If this were so, and, as a consequence, that no remarking would be good, unless made by a party owning the entire grant, in a large proportion of the cases, the doctrine would be utterly useless. How many large grants are there in the country, which, having been sold out in small tracts,- are now owned by different individuals? In all these cases, the application of the principle contended for, would make it impossible, by any remarking, to fix the exterior boundaries of any of the tracts, into which such grant would be divided. At any distance of time, they would be liable to have their lines changed by surveys according to course and distance, regardless of any monuments, made by the owners, to perpetuate their boundaries.
But such a doctrine is supported by neither principle nor authority. In the case of Davis’ lessee vs. Smith and Tapley, 1 Yer. 496. Searcy and Nechard ran a portion of the lines thereof, and yet this running was held to be good, and this, though it was afterwards discovered to be considerably varient from the original lines. Nor is there any reason why this should not be so. After the grantee has conveyed part of the land bordering on the exterior lines of his grant, he can have no interest in the manner in which those lines shall be run. Nor can other lines of the grant, than those called for in such deed, be affected by the acts of the owner of the lands so conveyed, so that no injury can result to any one, by the application of the principle of remarking in favor of an owner of part of the lands contained in a grant.
We therefore think the court below erred in the charge to the jury. Reverse the judgment, and remand the cause for another trial to be heard therein, when the cause will be charged as laid down in this opinion.
Reversed and remanded.